# Illinois Official Reports

## Appellate Court

---

### *Sinkus v. BTE Consulting*, 2017 IL App (1st) 152135

---

| | |
|---|---|
| Appellate Court Caption | JOHN SINKUS, Plaintiff-Appellant, v. BTE CONSULTING, CARL THOMAS, JOYCE THOMAS, and 5WYRE, LLC, Defendants (BTE CONSULTING, Defendant-Appellee). |
| District & No. | First District, Third Division<br>Docket Nos. 1-15-2135, 1-16-1463 cons. |
| Rule 23 order filed | December 28, 2016 |
| Rule 23 order withdrawn | February 15, 2107 |
| Opinion filed | March 15, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-35120; the Hon. Rita Mary Novak, Judge, presiding. |
| Judgment | Reversed in part; vacated in part. |
| Counsel on Appeal | Law Office of Lofgren & Wentworth, PC, of Glen Ellyn (Richard J. Lofgren and Charles G. Wentworth, of counsel), for appellant.<br><br>Murphy & Hourihane, LLC, of Chicago (Eugene E. Murphy, Jr., John N. Hourihane, Jr., and David Hyde, of counsel), for appellee. |

Panel                    JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment and opinion.

## OPINION

¶ 1      These consolidated appeals arise from orders holding the plaintiff, John Sinkus (Sinkus), in indirect civil contempt for failing to comply with the trial court's orders directing him, as a shareholder of defendant BTE Consulting (BTE), to contribute to the compensation of BTE's court-appointed provisional director. On appeal, Sinkus contends that the trial court lacked authority to order him to compensate the provisional director, because section 12.56(g) of the Business Corporation Act of 1983 (Act) (805 ILCS 5/12.56(g) (West 2014)) specifically provides that provisional directors are to be compensated by the corporation. We agree that the language of section 12.56(g) of the Act is clear in requiring payment of provisional directors by the corporation and, therefore, reverse.

¶ 2                               BACKGROUND

¶ 3      The procedural history of this case is convoluted, and much of it is not relevant to the issues before us. Accordingly, we include only those facts that are relevant and necessary to the disposition of the questions before us.

¶ 4      In September 2012, Sinkus instituted this action by filing his original complaint against defendants BTE, Carl Thomas (Thomas), Joyce Thomas (Joyce), and 5WYRE, LLC (5WYRE). In his complaint, Sinkus alleged that BTE was an Illinois corporation. Sinkus and Thomas are the only two shareholders of BTE, each owning 50% of the outstanding equity. In April 2012, after Sinkus and Thomas reached an impasse on the dissolution and liquidation of BTE, Sinkus resigned as an officer and director of BTE and signed a shareholder waiver, leaving Thomas to manage BTE as the sole remaining officer and director. Sinkus further alleged that during this time, Thomas and Joyce formed 5WYRE, which they used to improperly solicit business away from BTE for their own benefit. Sinkus complained that Thomas sold all of BTE's assets without his knowledge or consent. Based on these allegations, Sinkus brought derivative and direct claims against the defendants for breach of fiduciary duties and conspiracy to breach fiduciary duties, and a claim for minority shareholder oppression.

¶ 5      Extensive pleading practice followed, including the addition of more parties, multiple motions to dismiss, and several amendments of complaints, answers, and counterclaims. During this time, Thomas and BTE originally shared the same counsel. That counsel later withdrew from representing BTE, and the law firm of Murphy & Hourihane, LLC (M&H) subsequently appeared on behalf of BTE. Sinkus moved to disqualify M&H on the basis that Thomas was influencing M&H's decision making. On May 5, 2014, the trial court denied Sinkus's motion to disqualify, but instead decided to appoint a provisional director of BTE pursuant to sections 12.56(b)(4) and 12.56(c) of the Act (805 ILCS 5/12.56(b)(4), (c) (West 2014)). According to the trial court, the purpose of the provisional director was to direct the litigation on behalf of BTE and to "ensure that Thomas does not unduly influence counsel for

[BTE]." The trial court's order specifically stated that the provisional director would be compensated by BTE.

¶ 6 The trial court ordered Sinkus and Thomas to each submit the names of two proposed provisional directors, from which the trial court would make its selection. Sinkus did not submit any names. BTE, although not ordered to do so, submitted two names, which Thomas adopted. From those names, the trial court selected retired judge Daniel J. Kelley (Kelley) to serve as the provisional director.

¶ 7 Three months later, BTE filed a "Motion for Instructions." In that motion, BTE stated that M&H and Kelley reached an agreement under which Kelley would be compensated for his work as provisional director through an advance on his fees. To obtain that advance, Kelley made a capital call to the shareholders—Sinkus and Thomas—of $25,000 each. Thomas responded that he would not contribute the requested amount because he had already contributed capital in excess of the requested $25,000 for payment of outstanding vendor invoices and attorney fees (including M&H's) on behalf of BTE. Sinkus also declined to contribute to the capital call on the basis that he was not responsible for BTE's debts and there was no agreement between him and Thomas to make contributions to BTE. In light of these refusals, BTE requested that the trial court order Sinkus and Thomas to provide the funds necessary to compensate Kelley.

¶ 8 On May 4, 2015, after briefing and arguments by the parties, the trial court, pursuant to section 12.56(c) of the Act, granted BTE's motion and ordered Sinkus and Thomas to each pay $25,000 to Kelley. Thereafter, Sinkus refused to comply and requested that the trial court hold him in contempt. The trial court obliged on June 24, 2015, holding Sinkus in indirect civil contempt and ordering him to pay a fine of $10 per month. The trial court ordered that the fine be stayed upon Sinkus's depositing $25,000 with the clerk of the circuit court of Cook County. On July 24, 2015, Sinkus filed his notice of appeal, giving rise to appeal No. 1-15-2135.

¶ 9 While that appeal was pending, Kelley issued a second capital call, this time for $30,000 from each Sinkus and Thomas. When Sinkus did not contribute the requested $30,000, the trial court, on May 3, 2016, ordered him to pay the $30,000 to Kelley. Sinkus again refused, and on May 19, 2016, was found to be in indirect civil contempt and was fined $10 per month. Again, the fine was stayed pending Sinkus's depositing $30,000 with the clerk of the court. Sinkus timely appealed on June 6, 2016, giving rise to appeal No. 1-16-1463.

¶ 10 The two appeals were subsequently consolidated, as they presented the same issue.

¶ 11 ANALYSIS

¶ 12 On appeal, Sinkus argues that the trial court lacked authority to order him, as a shareholder, to contribute to Kelley's fees because the Act specifically requires that the fees of a provisional director be paid by the corporation itself. We agree.

¶ 13 As an initial matter, BTE argues that the trial court's decision should be reviewed under an abuse-of-discretion standard because the issue involves the trial court's exercise of its powers under the Act. BTE misconstrues the question before this court. The question is not whether the trial court properly exercised its authority, but whether the trial court even possessed the authority that it claimed to exercise. The resolution of this issue requires us to determine whether the Act permits a trial court to order anyone other than the corporation at issue to pay

the fees of a provisional director. Questions of statutory construction such as this are subject to *de novo* review. *People ex rel. Madigan v. Bertrand*, 2012 IL App (1st) 111419, ¶ 20.

¶ 14 The primary goal in statutory construction is to ascertain the intent of the legislature. The best indicator of this intent is the language of the statute, which must be given its plain and ordinary meaning. *Id.* In interpreting a statute, we must view the statute as a whole, making sure not to read any of its language in isolation. *Board of Education of Woodland Community Consolidated School District 50 v. Illinois State Charter School Comm'n*, 2016 IL App (1st) 151372, ¶ 38. We must avoid any interpretation that would render any portion of the statute superfluous, meaningless, or void. *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001). Just as we may not read out any portion of the statute, we may not alter the plain meaning of a statute's language by reading into it exceptions, limitations, or conditions not expressed by the legislature. *Board of Education*, 2016 IL App (1st) 151372, ¶ 34.

¶ 15 In an action brought by a shareholder of a nonpublic corporation, the Act empowers the trial court, under certain circumstances described in section 12.56(a) of the Act (805 ILCS 5/12.56(a) (West 2014)), to choose from and order a variety of remedies indentified in section 12.56(b) of the Act. With respect to the available remedies, the Act provides:

"(b) The relief which the court may order in an action under subsection (a) includes but is not limited to the following:

(1) The performance, prohibition, alteration, or setting aside of any action of the corporation or of its shareholders, directors, or officers of or any other party to the proceedings;

(2) The cancellation or alteration of any provision in the corporation's articles of incorporation or by-laws;

(3) The removal from office of any director or officer;

(4) The appointment of any individual as a director or officer;

(5) An accounting with respect to any matter in dispute;

(6) The appointment of a custodian to manage the business and affairs of the corporation to serve for the term and under the conditions prescribed by the court;

(7) The appointment of a provisional director to serve for the term and under the conditions prescribed by the court;

(8) The submission of the dispute to mediation or other forms of non-binding alternative dispute resolution;

(9) The payment of dividends;

(10) The award of damages to any aggrieved party;

(11) The purchase by the corporation or one or more other shareholders of all, but not less than all, of the shares of the petitioning shareholder for their fair value and on the terms determined under subsection (e); or

(12) The dissolution of the corporation if the court determines that no remedy specified in subdivisions (1) through (11) or other alternative remedy is sufficient to resolve the matters in dispute. In determining whether to dissolve the corporation, the court shall consider among other relevant evidence the financial condition of the corporation but may not refuse to dissolve the corporation solely because it has accumulated earnings or current operating profits.

(c) The remedies set forth in subsection (b) shall not be exclusive of other legal and equitable remedies which the court may impose." 805 ILCS 5/12.56(b)-(c) (West 2014).

With respect to the compensation of such provisional directors, section 12.56(g) of the Act then provides as follows:

"In any proceeding under this Section, the court shall allow reasonable compensation to the custodian, provisional director, appraiser, or other such person appointed by the court for services rendered and reimbursement or direct payment of reasonable costs and expenses, which amounts shall be paid by the corporation." 805 ILCS 5/12.56(g) (West 2014).

¶ 16    Section 12.56(g) of the Act specifically addresses whether, to what extent, and by whom a provisional director appointed under the Act is to be compensated, and we conclude that the plain language requires that the compensation of a provisional director appointed under the Act be paid by the corporation, not its shareholders. We can glean no other meaning from the legislature's decision to include the phrase "which amounts shall be paid by the corporation." Had the legislature intended to leave the determination of who would compensate a provisional director to the discretion of the trial court, it certainly could have done so by simply leaving out the directive that the compensation be paid by the corporation. See *People v. Ullrich*, 135 Ill. 2d 477, 485 (1990) (noting that had the legislature intended to bestow discretion on the trial court in setting fines for overweight vehicles, it would have eliminated the mandatory language from the statute); *Andersen v. Andersen*, 315 Ill. App. 380, 388 (1942) ("Had the legislature intended to vest the court with a discretion to excuse the plaintiff from giving a bond with sufficient surety, it would have manifested such intention by appropriate language."). Moreover, other sections of the Act demonstrate that the legislature knew how to draft statutory provisions leaving certain determinations to the trial court's discretion, if it so desired. See, *e.g.*, 805 ILCS 5/12.56(b) (West 2014) (providing that a trial court "may" order the listed forms of relief); 805 ILCS 5/12.56(f)(3) (West 2014) (providing that a trial court "in its discretion" may allow the purchase of a shareholder's shares at a price higher than that requested in the petition).

¶ 17    Tellingly, BTE does not dispute that the language of section 12.56(g) of the Act requires that the compensation of a provisional director be paid by the corporation as opposed to by the shareholders. In fact, BTE makes no argument whatsoever with respect to the language of section 12.56(g) and even goes so far as to state that the trial court's May 5, 2014, order, which provided that the not-yet-appointed provisional director would be paid by BTE, was consistent with section 12.56(g).

¶ 18    Instead of addressing the clear language of section 12.56(g), BTE argues that sections 12.56(b)(1) and 12.56(c) provided the trial court with authority to order the shareholders to compensate Kelley. Section 12.56(b)(1) provides that, as a form of relief in an action brought by the shareholder of a nonpublic corporation, the trial court may order "[t]he performance, prohibition, alteration, or setting aside of any action of the corporation or of its shareholders, directors, or officers of or any other party to the proceedings." 805 ILCS 5/12.56(b)(1) (West 2014). Section 12.56(c) of the Act, which the trial court also relied on in ordering Sinkus and Thomas to contribute to the compensation of Kelley, provides that "[t]he remedies set forth in [section 12.56(b)] shall not be exclusive of other legal and equitable remedies which the court may impose." 805 ILCS 5/12.56(c) (West 2014).

¶ 19    Interpreting sections 12.56(b)(1) and 12.56(c) as permitting a trial court to order shareholders to pay the fees of a provisional director creates a conflict between those sections and the clear language of section 12.56(g), and a decision as to which of the sections controls must be made. If sections 12.56(b)(1) and 12.56(c) control, then the specific directive of section 12.56(g) that the provisional director be compensated by the corporation is rendered meaningless. Such a reading is in direct contravention of the canons of statutory construction. *Sylvester*, 197 Ill. 2d at 232 (interpretations that render portions of a statute meaningless must be avoided). If, however, section 12.56(g) controls, then not only do we avoid rendering a portion of the Act meaningless, but we also comply with the rule that the more specific statutory provision—in this case, section 12.56(g)—prevails over the more general provisions of sections 12.56(b)(1) and 12.56(c). See *Wells Fargo Bank Minnesota, NA v. Envirobusiness, Inc.*, 2014 IL App (1st) 133575, ¶ 30. Therefore, it is apparent that section 12.56(g) governs and that the compensation for a provisional director must come from the corporation itself, not its shareholders.

¶ 20    BTE denies that any conflict exists between sections 12.56(b)(1) and 12.56(c) and section 12.56(g), and instead contends that the conflict lies between the remedies of section 12.56 of the Act and the shareholder immunity provided for in section 6.40 of the Act. Section 6.40 of the Act provides that, other than paying to the corporation the full consideration for shares of the corporation, a shareholder is not personally liable for any other amounts in his or her capacity as shareholder. 805 ILCS 5/6.40 (West 2014); see *Jacobson v. Buffalo Rock Shooters Supply, Inc.*, 278 Ill. App. 3d 1084, 1088 (1996) ("A corporation is a legal entity which exists separate and distinct from its shareholders, directors and officers. [Citation.] Accordingly, the shareholders, directors and officers are not, as a general rule, liable for the corporation's obligations."). According to BTE, the conflict exists in that section 12.56 permits the trial court to order shareholders—such as Sinkus and Thomas—to compensate a provisional director, while section 6.40 provides that shareholders are not personally responsible for the obligations of the corporation.

¶ 21    BTE's contention in this respect only further supports our conclusion that section 12.56(g) is to be interpreted as limiting the payment of a provisional director's compensation to the corporation. If we were to accept BTE's argument that sections 12.56(b)(1) and 12.56(c) of the Act permit a trial court to order shareholders to compensate a provisional director, despite the language of section 12.56(g) indicating otherwise, not only would there exist a conflict between sections 12.56(b)(1) and 12.56(c), and section 12.56(g), but there also would be a conflict between sections 12.56(b)(1) and 12.56(c), and section 6.40. Both of these conflicts are avoided, however, if we construe section 12.56(g) as limiting payment of a provisional director to the corporation. This is the favored result, because we are required, whenever possible, to construe statutes addressing the same subsection in harmony with each other. *Holly v. Montes*, 231 Ill. 2d 153, 161-62 (2008); *Newland v. Budget Rent-A-Car Systems, Inc.*, 319 Ill. App. 3d 453, 456 (2001).

¶ 22    BTE also argues that the trial court possesses the inherent equitable authority to order Sinkus to compensate Kelley as a means of implementing its appointment of a provisional director. In support, BTE cites *Ardt v. Illinois Department of Professional Regulation*, 154 Ill. 2d 138 (1992), for the proposition that legislation cannot take away or abridge the power of equitable courts. The issue in *Ardt* was whether the trial court could stay sanctions imposed on the plaintiff by the Department pending administrative review. *Id.* at 142. The Department

argued that the trial court could not, because section 32 of the Dental Practice Act (Ill. Rev. Stat. 1987, ch. 111, ¶ 2332) provided that any sanctions imposed by the Department were to remain in full force and effect pending any subsequent judicial proceedings. *Ardt*, 154 Ill. 2d at 144. The Illinois Supreme Court ultimately held that a stay or temporary restraining order is a distinctly equitable remedy, which a court has the inherent power to issue. Because this inherent power is derived from the historic power of equity courts, the legislature could not take it away or abridge it, and to the extent that section 32 of the Dental Practice Act attempted to do so, it was unconstitutional. *Id.* at 146.

¶ 23    Although *Ardt* stands for the proposition for which BTE cites it, BTE has not provided any authority or argument that trial courts possess an inherent power to order shareholders of a corporation to compensate a provisional director in the same manner that they possess the inherent power to issue stays and injunctions. BTE also has failed to provide any authority or argument in support of the more generalized notion that a trial court has the inherent power to issue any orders that it deems necessary to effectuate its directives. BTE's failure in this respect results in the waiver of this argument. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); see also *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 207 (2007) ("Mere contentions, without argument or citation of authority, do not merit consideration on appeal and are waived.").

¶ 24    Similarly, BTE's contention that because Kelley was appointed in response to Sinkus's concerns that Thomas was exercising undue influence over BTE, Sinkus has an equitable obligation to fund Kelley's compensation is waived for failure to cite authority or provide supporting argument. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); see also *First National Bank*, 375 Ill. App. 3d at 207 ("Mere contentions, without argument or citation of authority, do not merit consideration on appeal and are waived.").

¶ 25    We note that Kelley's requests for funds from Sinkus and Thomas were made pursuant to "capital calls" on behalf of BTE. We need not determine, however, whether ordering shareholders to submit to a capital call in order to allow a corporation to pay a provisional director is compliance with or an end-run around the Act's requirement that a provisional director be paid by the corporation, because the record does not contain enough information to conclude that the "capital call" in this case was proper.

¶ 26    Pursuant to the trial court's order appointing Kelley as provisional director of BTE, Kelley was "charged with directing this litigation for BTE." The order does not provide for any role for Kelley in handling or directing any other business affairs of BTE. It is possible that the $110,000 in capital contributions requested by Kelley was to be used in handling the present litigation for BTE. The record, however, does not contain any evidence or limitations on the use of these funds.

¶ 27    Moreover, although the record in this case does not contain a precise valuation of BTE and its assets, the pleadings and transcripts in the record suggest that BTE does not possess the assets to pay Kelley for his work as provisional director. As previously discussed, however, section 6.40 of the Act provides that shareholders are not responsible for financial obligations of the corporation other than the payment of the full consideration for their equity shares. 805 ILCS 5/6.40 (West 22014). Shareholders may agree, however, to be subject to capital calls under terms agreed upon in the shareholders' agreement. See generally *Salce v. Saracco*, 409 Ill. App. 3d 977 (2011) (addressing whether the plaintiff properly plead a claim for breach of contract based on allegations that the minority shareholders breached the terms of the

shareholders' agreement by failing to pay their share of a capital call). In this case, Sinkus argued in the trial court that Kelley lacked the authority to make a capital call because there was no agreement between Sinkus and Thomas in the shareholders' agreement to make additional capital contributions to BTE. At no point did Thomas dispute this argument, and neither of the parties point to anything in the record suggesting that the shareholders' agreement provides otherwise.

¶ 28 In sum, we conclude that the language of section 12.56(g) of the Act is clear in requiring that payment of a provisional director appointed under the Act be paid by the corporation alone, and there is insufficient evidence in the record to allow us to conclude that Kelley's "capital calls" to Sinkus and Thomas were proper attempts to fund the corporation's payment of Kelley's fees. Accordingly, the trial court's May 4, 2015, and May 3, 2016, orders directing Sinkus and Thomas to pay Kelley are reversed.

¶ 29 As discussed, the trial court held Sinkus in indirect civil contempt—or, as Sinkus likes to call it, "friendly contempt"—for failing to comply with the May 4, 2015, and May 3, 2016, orders. Indirect civil contempt occurs when, outside the presence of the trial court, a party fails to follow the orders of the trial court, resulting in the opposing party's loss of a benefit or advantage. *Cetera v. DiFilippo*, 404 Ill. App. 3d 20, 41 (2010). A finding of indirect civil contempt relies on the existence of a court order and willful disobedience of that court order. *Id.* Because we reverse the orders of May 4, 2015, and May 3, 2016, the findings of indirect civil contempt against the plaintiff for violating them cannot stand and must be vacated.

¶ 30 CONCLUSION

¶ 31 For the foregoing reasons, the circuit court of Cook County's May 4, 2015, and May 3, 2016, orders directing Sinkus and defendant Carl Thomas to compensate provisional director Daniel Kelley are reversed, and the circuit court of Cook County's June 24, 2015, and May 19, 2016, orders holding Sinkus in indirect civil contempt are vacated.

¶ 32 Reversed in part; vacated in part.